**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE UNITED STATES OF AMERICA FOR THE USE AND BENEFIT OF GURTZ ELECTRIC COMPANY,** | ) | |
| **Plaintiff,** | ) | **No. 07-cv-4430** |
| **v.** | ) | **Judge Joan H. Lefkow** |
| **GILBANE BUILDING COMPANY; and TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gurtz Electric Company ("Gurtz"), has filed a three-count complaint against Gilbane Building Company ("Gilbane") and Travelers Casualty & Surety Company of America ("Travelers") (collectively, "Defendants"), asserting claims under the Miller Act,[1] for breach of contract, and, alternatively, for recovery in quantum meruit. Defendants move pursuant to Fed. R. Civ. P 12(f) and 12(b)(6) to strike and dismiss certain allegations set forth in Gurtz's complaint, arguing that the contract between Gurtz and Gilbane bars recovery by Gurtz based on those allegations. Defendants also move to dismiss Gurtz's unjust enrichment claim in its entirety because Gurtz admits that a valid contract governs its claims. For the following reasons, Defendants' motion [#43] is granted in part and denied in part.

---

[1]For purposes of this motion, the court reads the First Amended Complaint as asserting a claim under the Miller Act only as a mechanism to hold Travelers jointly and severally liable with Gilbane.

## BACKGROUND[2]

This case arises from the alleged breach of a contract executed between a construction manager, Gilbane, and one of its subcontractors, Gurtz. The United States Government Services Agency ("GSA") executed a contract with Gilbane ("Prime Contract") to perform alteration and modernization work on a federal building located in Chicago. Gilbane then entered into a subcontract with Gurtz to complete certain electrical, security, and fire alarm work ("Subcontract"). Gilbane agreed to pay Gurtz $7,825,262,[3] and Gurtz agreed to substantially complete its work by January 3, 2006.[4] Gurtz's materials and labor were also covered by the payment bond between Gilbane and its surety, Travelers, which was executed pursuant to the requirements of the Miller Act.

Three contractual provisions concerning the remedies available to Gurtz for delay are at issue in the instant motion. First, the Prime Contract contains an exculpatory clause which limits the availability of damages for delay to subcontractors ("Limitations Clause"). The Limitations Clause provides:

> 26.3.8 Neither the Owner [GSA] nor the Architect nor the Construction Manager [Gilbane] shall have liability to the Trade Contractor [Gurtz]. . . for delay, hindrance, or interference in the performance of the Work, however caused, except for delay or hindrance resulting from active interference of Owner [GSA] or its representatives in such Trade Contractor's [Gurtz's] execution of the Work, and except for delay or hindrance resulting from defective plans and specifications.

(*See* Ex. A to Defs.' Mem. at 26.3.8).[5] Second, the Subcontract contains a provision which obligates Gilbane to work with GSA to extend the period of time for Gurtz to complete its work

---

[2] Unless otherwise noted, the facts recited herein are taken from Gurtz's complaint.
[3] The original price was $6,122,000 but was increased to $7,825,262 to accommodate various changes requested by Gilbane.
[4] Gurtz was originally obligated to substantially complete its work by October 28, 2005 but alleges, on information and belief, that GSA adjusted the substantial completion date to January 3, 2006.
[5] The Limitations Clause appears to apply to Gurtz via Article 4.4 of the Subcontract.

if Gurtz is delayed by "any act or neglect" on the part of Gilbane or GSA, by changes ordered in the work, or by "any causes beyond [its] control." (*See* Ex. 2 to Am. Complt. at 9.16). Third, the Subcontract contains a provision prohibiting Gurtz from bringing claims against Gilbane for delays caused by other subcontractors. (*See id.* at 20.1.7).

Gurtz argues that it was unable to substantially complete the work Gilbane assigned it by January 3, 2006, the adjusted substantial completion date. Gurtz alleges that Gilbane caused its delay by furnishing defective plans and specifications; demanding that Gurtz perform work different from, or in addition to, the work required under the subcontract; interfering with Gurtz's reasonable access to the Project and otherwise delaying and disrupting Gurtz's ability to work on the Project; failing to cooperate with Gurtz; and failing to properly schedule or coordinate its other subcontractors and suppliers in a manner which would permit Gurtz to perform its work in a timely and efficient manner. (*See* First Am. Compl. at ¶¶ 10-19, 35.) As a result of these delays and disruptions caused by Gilbane, Gurtz asserts that it was denied the ability to perform work in an organized and efficient manner and was instead forced to work in areas congested with other subcontractors. Furthermore, Gurtz contends that Gilbane's acts entitled Gurtz to time extensions under the subcontract but that Gilbane refused to provide them.

Gurtz filed this lawsuit against Gilbane and Travelers to recover over $2 million in additional labor and supervision costs, and premium time expenses, incurred as a result of Gilbane's alleged breaches of the subcontract. Gurtz's Amended Complaint asserts claims under the Miller Act (Count I), for breach of contract (Count II), and for recovery in *quantum meruit* (Count III).

## STANDARDS

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded allegations in the plaintiff's complaint and draws all reasonable inferences in favor of the plaintiff. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002). In order to survive a Rule 12(b)(6) motion, the complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *EEOC* v. *Concentra Health Servs., Inc*., 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp*. v. *Twombly*, --- U.S. ----, 127 S. Ct. 1955, 1964, 167 L.E.2d 929 (2007)). The allegations in the complaint must also be "enough to raise a right to relief above a speculative level." *Twombly*, 127 S. Ct. at 1965.

A motion made pursuant to Rule 12(f) asks the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored because of the likelihood that they may serve only to delay proceedings. *Heller Financial, Inc*. v. *Midwhey Powder Co*., 883 F.2d 1286, 1294 (7th Cir. 1989). Nevertheless, a motion to strike may sometimes be "a useful means of removing 'unnecessary clutter' from a case, which will in effect expedite the proceedings." *Reis Robotics USA, Inc.* v. *Concept Indus., Inc.*, 462 F. Supp. 2d 897, 904 (N.D. Ill. 2006) (quoting *Heller*, 883 F.2d at 1294).

## DISCUSSION[6]

Defendants move to strike and dismiss those portions of Counts I and II which support recovery from Gilbane for actions not specified in the Limitations Clause. Defendants also move to dismiss Gurtz's *quantum meruit* claim because they contend the parties' agree that an express contract governs. The court will address each argument in turn.

### I. Defendants' Motion to Strike Allegations and Dismiss Claims from Counts I and II.

Defendants argue that the Limitations Clause bars several of Gurtz's claims in Counts I and II. Specifically, Defendants contend that the Limitations Clause entitles Gurtz to recover damages for delays only resulting from (1) "active interference" by GSA or its representatives or (2) from "defective plans and specifications." (Defs.' Mem. at 3). Gurtz argues that it should be able to recover for delays which fall outside these two categories based on certain judicially crafted, equitable exceptions.

As a general principle, it is well settled in Illinois that "a contractor may recover damages for acts or omissions of the owner which burden the performance of work and increase the costs of completion." *Bates & Rogers Constr. Corp.* v. *North Shore Sanitary Dist.*, 414 N.E.2d 1274, 1278, 92 Ill. App. 3d 90, 94 (Ill. App. Ct. 2d Dist. 1980), *aff'd , Bates & Rogers Constr. Corp.* v. *Greeley & Hansen*, 486 N.E.2d 902, 109 Ill. 2d 225, 93 Ill. Dec. 369 (Ill. 1985). Although contractual provisions that limit the availability of damages for delay are generally enforceable, they will be construed strictly against those who seek their benefit. *See, e.g., J & B Steel Contractors, Inc.* v. *C. Iber & Sons, Inc.*, 642 N.E.2d 1215, 1221-22, 162 Ill. 2d 265, 205 Ill. Dec. 98 (Ill. 1994); *G.M. Harston Construction Co.* v. *City of Chicago*, 371 F. Supp. 2d 949, 952 (N.D. Ill. 2005). Accordingly, Illinois law recognizes certain exceptions to "no-damages-for-

[6] The court has jurisdiction pursuant to 28 U.S.C. 1332(a) and the Miller Act, 40 U.S.C. §§ 3131-34.

delay" clauses. Those exceptions include (1) delay "not within the contemplation of the parties"[7]; (2) delay of "unreasonable duration"; and (3) delay attributable to "inexcusable ignorance or incompetence of the engineer." *See J & B Steel*, 642 N.E.2d at 1222 (citing *John Burns Constr. Co.* v. *City of Chicago*, 601 N.E.2d 1024, 234 Ill. App.3d 1027, 176 Ill. Dec. 326 (Ill. App. Ct 1st Dist. 1992) (affirming the reversal of a dismissal of a claim seeking recovery for delays despite the presence of a "no-damages-for-delay" clause based on the availability of certain equitable exceptions to plaintiff)[8]; *see also Mellon Stuart Constr.* v. *Metro. Water Reclamation Dist. of Greater Chicago*, No. 93-6241, 1995 U.S. Dist. LEXIS 5376 at *32-33 (N.D. Ill. April 19, 1995).

Defendants argue that judicially crafted exceptions apply only to "no-damages-for-delay clauses," and not to the Limitations Clause at issue in this case, which does not "completely preclude Plaintiff from obtaining delay damages." Defs.' Reply at 2-4. In *Mellon Stuart*, however, this court recognized that the exceptions to "no-damages-for-delay" clauses may be extended to other exculpatory clauses which limit but do not completely prohibit recovery of delay damages.[9] The court found:

> Whether the exceptions apply to restrictive damages clauses should be determined on a case-by-case basis with proper consideration of the Illinois Supreme Court's directive that "one measure of any judicially created exception's validity is the extent to which it avoids [a] harsh result yet honors the notion that

[7]Delays "not contemplated by the parties" are "unforseeable delays and obstructions or those not naturally arising from performance of the work itself or the subject of the contract." *J&B Steel*, 642 N.E.2d at 1222.

[8]The court acknowledges that *J&B Steel* recognized, but declined to rule on adopting the other exceptions recognized by Illinois appellate courts, namely delays of "unreasonable duration" and those attributable to "inexcusable ignorance or competence of the engineer." 642 N.E.2d at 1221-22.

[9]The court disagrees with Defendants' assertion that *Mellon Stuart* represents a split amongst courts in the Northern District of Illinois or is otherwise inconsistent with Illinois law. All of the cases cited by Defendants in support of this argument were decided before the Illinois Supreme Court, in *J&B Steel,* recognized exceptions to "no-damages-for-delay" clauses. As discussed in *Mellon Stuart*, expanding those factors to exculpatory clauses limiting but not barring damages for delay is consistent with the reasoning in *J&B Steel. See Mellon Stuart*, 1995 U.S. Dist. LEXIS 5376, at *31-34.

> merely bad bargains are beyond the concern of courts." Among the factors the court should consider in making this determination include the extent of damages recoverable under the restrictive provision (*i.e.,* the more limited the damages, the greater the likelihood that the exceptions will apply), the harshness of the result, who determines the amount of the recoverable damages, and whether the reason for the cause of the delay falls within the parameters of an exception.

*Mellon Stuart*, 1995 U.S. Dist. LEXIS 5376, at *35 (quoting *J&B Steel*, 642 N.E.2d at 1222). Applying the factors enumerated, the court found that the exculpatory clause at issue was "fairly restrictive" and, consequently, that the recognized exceptions applied. *Id.* at *40.

Defendants argue that, unlike the exculpatory clause at issue in *Mellon Stuart*, the Limitations Clause is not "fairly restrictive" but "fair and reasonable," because it allows Gurtz to recover damages under two sets of circumstances, when GSA or its representatives actively interfere with Gurtz's work or when defective plans or specifications are provided. (Defs.' Reply at 6-7). This argument is unpersuasive. First, the exculpatory clause in *Mellon Stuart* limited the plaintiff's recovery to out-of-pocket expenses and excluded recovery of any anticipated lost profits or home office overhead costs. *Mellon Stuart*, 1995 U.S. Dist. LEXIS 5376, at *35-36. Arguably, the exculpatory clause in this case is even more restrictive than that in *Mellon Stuart*, because it prevents Gurtz from recovering out-of-pocket expenses,[10] in addition to lost profits and overhead costs, which do not result from "active interference" or "defective plans or specifications." Furthermore, as in *Mellon Stuart*, a harsh result would occur if the recognized exceptions were not applied to the Limitations Clause, because Gurtz would be prevented from recovering for delays caused by Gilbane's mismanagement of the subcontractors working on the project and Gilbane's failure to cooperate with Gurtz – actions which may not

---

[10] Gurtz alleges that it "sustained a $3,799,675 cost overrun." Am. Compl. at 24.

fall within the Limitations Clause but nonetheless prevented Gurtz from substantially completing its work by the GSA's deadline.

Defendants appear to argue that the harshness of strictly enforcing the Limitations Clause is mitigated by the fact that Gilbane was entitled, under separate provisions of the Subcontract, to time extensions for delays outside of its control. (*See* Defs.' Reply at 7). The court disagrees.[11] Defendants acknowledge that the purpose of the time extensions was not to compensate Gurtz for the damages it did sustain but to prevent Gilbane from imposing liquidated damages on Gurtz for delay not within Gurtz's control. (*See id.* at 7-8). Moreover, Gurtz could not give itself time extensions but had to rely on Gilbane to do so, which Gurtz alleges Gilbane failed to do. (*See* Am. Compl. ¶ 35(e) (Gilbane "failed to provide Gurtz with appropriate Subcontract time extensions for delays and disruptions to Gurtz's work on the Project."))

Also unpersuasive is Defendants' argument that the Limitations Clause is less restrictive because another provision of the Subcontract permits Gurtz to directly recover from other subcontractors for delays which they caused. (*See* Defs.' Reply at 7). Gurtz explains that it is not alleging that other subcontractors caused its delay, rather, Gurtz is alleging that Gilbane caused its delay by failing to properly manage and control the other subcontractors and suppliers. (*See* Pl.'s Resp. at 8-9). This is a fair reading of the Amended Complaint, as all of the paragraphs in which Gurtz mentions other subcontractors also mention Gilbane. (*See* Am. Compl. ¶¶ 13, 15-16).[12] It is clear from those paragraphs that it was Gilbane, not the other

---

[11] It is noteworthy that time extensions were also available to the plaintiff in *J & B Steel*. 162 Ill. 2d at 275, 642 N.E.2d at 1221. Yet, the availability of time extensions notwithstanding, the court named the restriction at issue in that case a "*no damages* for delay" clause before recognizing the exceptions previously discussed.

[12] Paragraph 13 states, "For reasons beyond Gurtz's control or responsibility, including delays and disruptions to Project work caused by Gilbane or Gilbane's subcontractors and suppliers working on the Project *under Gilbane's control and/or direction*, the Project was not substantially completed for many

subcontractors, that Gurtz alleges caused the delays. For these reasons, the court also denies Defendants' related request that all claims and allegations concerning delays caused by other subcontractors be dismissed and stricken.

The court concludes that the Limitations Clause at issue in this case is fairly restrictive and is not persuaded by Defendants' argument that the provisions of the Subcontract providing for time extensions and potential for recovery from other subcontractors make the Limitations Clause any less restrictive. Thus, as in *Mellon Stuart*, the court finds that the recognized exceptions to "no-damages-for-delay" clauses may apply to the Limitations Clause. Whether Gilbane can present facts sufficient to show that those exceptions actually do apply is an issue going to the merits. On a motion to dismiss, the court must take the facts alleged as true and draw all inferences from them in the light most favorable to Gurtz. Under that standard, the allegations regarding delays caused by actions outside the scope of the Limitations Clause support a breach of contract claim. Accordingly, the court denies Gilbane's motion to dismiss and strike such allegations from Counts I and II.[13]

## II. Defendants' Motion to Dismiss Count III.

Defendants argue that Gurtz's unjust enrichment claim must be dismissed because Gurtz has admitted the "existence and enforceability of the Subcontract between the parties" and that "the matters in controversy are subject to and governed by the Subcontract." (Defs.' Mem. at

---

months beyond the . . . substantial completion date . . . ." (emphasis added). Paragraph 15 states, "Predecessor Project work required before Gurtz could start and/or complete its Subcontract work was delayed and/or disrupted by Gilbane or Gilbane's subcontractors and suppliers working on the Project *under Gilbane's control and/or direction* . . . ." (emphasis added). Paragraph 16 states, "Gilbane and Gilbane's other subcontractors and suppliers failed to cooperate with Gurtz, and/or actively interfered with Gurtz's performance of work, and denied Gurtz reasonable access to its Subcontract work by placing materials and equipment to be incorporated in to the Project in areas that Gurtz was required to work. . . ."

[13]Because the court denies Defendants' motion to strike and dismiss certain claims and allegations from Counts I and II, the court need not address Gurtz's argument that Defendants are estopped from disclaiming liability to Gurtz.

10-11). Gurtz responds that it has sufficiently alleged that it performed work not encompassed by the Subcontract by stating that during the course of its work, "Gilbane directed Gurtz to perform work that was different from, and/or in addition to, the work required under the Subcontract." (Am. Complt. ¶ 12).

As the Seventh Circuit has explained, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Utility Audit, Inc*. v. *Horace Mann Serv. Corp*., 383 F.3d 683, 688-89 (7th Cir. 2004) (internal citations omitted). The court must determine whether a claim falls outside a contract by looking to the subject matter of the contract, not whether the contract contains terms or provisions related to the claim. *Id*. at 689.

Gurtz admits the validity and existence of the Subcontract and incorporates its terms into its Amended Complaint. While this is not necessarily fatal to its claims, Gurtz makes no attempt to allege facts or circumstances supporting its argument that it performed additional work which was outside the scope of the Subcontract. To the contrary, the additional costs which Gurtz seeks to recover appear to arise from work it admits was governed by the Subcontract. (Am. Compl. ¶ 7). Gurtz also appears to contend that the "additional work" on which its unjust enrichment claim is based entitled it to the time extensions under the Subcontract. (Am. Compl. ¶ 12). Most important to the court's decision is that Count III of Gurtz's complaint merely realleges the allegations set forth under Counts I and II and requests the same amount of damages as in Counts I and II. Courts in this district tend to dismiss unjust enrichment claims under similar circumstances. *See, e.g, Citadel Group Ltd.* v. *Sky Lakes Med. Ctr., Inc.*, No. 06-6162, 2008 U.S. Dist. LEXIS 35306, at *20-22 (N.D. Ill. Apr. 30, 2008); *Canadian Pac. Ry. Co.* v. *Williams-Haywards Protective Coatings, Inc.*, No. 02-8800, 2003 U.S. Dist. LEXIS 6518,

at *12-13 (N.D. Ill. April 16, 2003); *Bank One* v. *Trammell Crow Servs*., No. 03-3624, 2003 U.S. Dist. LEXIS 23120, at *20-22 (N.D. Ill. Dec. 22, 2003). As Gurtz has failed to allege *any* facts relating to the type of additional work performed and instead realleges the facts supporting its breach of contract claim in its claim for recovery in *quantum meruit*, Count III is dismissed.

**CONCLUSION AND ORDER**

For the foregoing reasons, the court grants Defendants' motion to dismiss Count III of the Amended Complaint and denies Gilbane's motion to strike and dismiss certain allegations from Counts I and II.

Dated: October 10, 2008

Enter: Joan H Lefkow

JOAN HUMPHREY LEFKOW

United States District Judge